IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID BURKETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO.  2:04-cv-01143-WKW |
| | ) | [wo] |
| | ) | |
| MONTGOMERY COUNTY | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on the defendant's Motion for Summary Judgment (Doc. # 13). For reasons to be discussed, the court finds that the motion is due to be granted.

**I.  FACTS AND PROCEDURAL HISTORY**

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable to the non-movant, show the following:

Plaintiff David Burkette ("Burkette") is a black male, who has been employed by the Defendant Montgomery County Board of Education ("the Board") as a teacher and coach since 1990. He had three years of previous teaching and coaching experience at other schools. Burkette earned a master's degree in physical education in 2002 and a master's degree in education administration in 2004. He is certified to teach health, driver's education, and physical education and administration.

Burkette's first position with the Board was at Cloverdale Junior High School as a physical education and health teacher. He also coached soccer, basketball, football, and track. In the fall of

1995, Burkette moved from Cloverdale to Montgomery County High School where he was the athletic director, head basketball coach, and head track coach.[1]  In 1998, he filed a civil action against the Board for race discrimination; the suit was subsequently settled and dismissed with prejudice.

In the fall of 1999, Burkette transferred to Sidney Lanier High School, where he was an assistant football and basketball coach, as well as girls' head softball coach.  After Burkette's first year at Lanier, the athletic director recommended that Burkette no longer be the football and softball coach.  Because of that action, Burkette filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in November 2000.  Burkette and the Board entered into a settlement agreement in 2001.  Since the 2000-2001 school year, Burkette has been an assistant boys' basketball coach for the varsity team and head coach of the junior varsity basketball team.  However, he applied for several coaching positions in 2000 and 2001, but he was rejected.  In 2002, he filed a civil action against the Board for race discrimination.  His employment discrimination claims were dismissed without prejudice for failure to exhaust administrative remedies.

Burkette asserts that the Board failed to promote him into four coaching positions in 2003 and 2004.  In the summer of 2003, Lee High School was in need of a person to coach the Girls' Basketball team.  Burkette testified that the position was either posted at school or advertised in the newspaper. According to the Board, the school principal, Randy Skipper ("Principal Skipper"), opted

---

[1] The Board asserts in its brief in support of the summary judgment motion that Burkette testified that he was demoted and stripped of his coaching and athletic director positions.  However, the pages of Burkette's deposition to which the Board cites to support these assertions are not included in the Board's evidentiary submission.

not to post the coaching position.[2]  Instead, Principal Skipper recommended that Robert Rollan ("Rollan"), a white male and a current teacher and coach at Lee High School, fill the position. Principal Skipper avers that it is typical for him to ask current employees at the school to fill supplemental positions for the sake of convenience.  The recommendation was made to the Superintendent and accepted by the Board.  Burkette testified that he submitted a letter of interest, but he did not maintain a copy.[3]

In September 2003, the Board posted the position of Head Boys' Basketball Coach at Brewbaker Technology Magnet High School ("Brewbaker Tech"), to which Burkette submitted a letter of interest.  The only other applicant for the job was Chauncey Shines ("Shines"), a black male.  Shines was assigned to teach at Brewbaker Junior High School, which is located within the same complex as Brewbaker Tech.  The selection committee was comprised of Principal Mitzi McLaurine ("Principal McLaurine") and Athletic Director John Higgins ("Higgins"). According to the Board, even though Shines and Burkette were similarly qualified, the selection committee recommended Shines because of his prior success and "the convenience of having him teaching within the Brewbaker Complex." (McLaurine Aff. ¶ 7.)  Burkette testified that Higgins was aware of Burkette's prior litigation arising out of his employment at Cloverdale in 1994.[4]

---

[2] Assistant Superintendent of Human Resources for the Board Jimmy Barker ("Assistant Barker") averred that coaching positions are supplemental or non-teaching positions, which are not required to be posted.  The principal has the discretion to choose whether these positions are posted.

[3] In his affidavit, Burkette claims that he hand delivered a copy of his letter of interest to both Assistant Barker and Principal Skipper.  Both men deny that they received oral or written communications from Burkette regarding this coaching position.

[4] Burkette alleges that he filed his first lawsuit against the Board in 1994 while teaching at Cloverdale; however, he offers no evidence to support this allegation.  On the other hand, the Board shows that in 1993 Burkette filed a race discrimination claim against the City of Montgomery Parks and Recreation Department, for whom he also worked.  The Board was not a party to that action.

3

In September 2003, Brewbaker Tech was in need of a person to fill the supplemental position of Girls' Basketball Coach. Burkette testified that the position was advertised in the newspaper. According to the Board, Principal McLaurine opted not to post or otherwise advertise the coaching position. Instead, Principal McLaurine recommended that Ashley Arrington ("Arrington"), a white female and a current teacher at Brewbaker Tech., fill the position. The Board asserts that there was no interview process, but Burkette testified that Shines told him that Arrington was the only interviewee. Burkette testified that he submitted a letter of interest; however, Principal McLaurine avers that she had no knowledge of Mr. Burkette's interest in the position. Burkette avers that he did express his interest in a letter dated March 12, 2002, but he fails to attach said letter to his affidavit.[5] Burkette alleges that he was more qualified than Arrington.

In March 2004, the Board posted the position of Athletic Director at Lee High School, which was being filled simultaneously with the position of Head Football Coach. Burkette submitted a letter of interest for only the Athletic Director position. The selection committee was comprised of Principal Skipper and Assistant Barker. Although Burkette was interviewed for the position, the selection committee ranked the top two candidates as Larry Ware ("Ware") and Chris Baxter ("Baxter"). The position was offered first to Ware, a black male and the head football coach at Carver High School and former assistant football coach at Lee High School. When Ware rejected the offer, the Board offered the position to Baxter, a white male and Lee High School alumnus, teacher, and football coach. Burkette alleged that he was more qualified than Baxter.

---

[5] Even if the letter had been attached, the evidentiary value of the letter is highly questionable. According to the Burkette, the letter is dated March 12, 2002; however, the position did not become available until September 2003.

In December 2003, Burkette filed a charge of discrimination with the EEOC alleging that he was not hired for the positions of Lee Girls' Basketball Coach and Brewbaker Tech Boys' Basketball Coach because of his race and in retaliation for his previous litigation against the Board. In May 2004, Burkette amended his charge of discrimination to include allegations that he was discriminated against when he was not hired for the positions of Brewbaker Tech Girls' Basketball Coach and Lee High School Athletic Director. He received notice of his right to sue on August 31, 2004, and brought this action on November 24, 2004, alleging racial discrimination and retaliation under 42 U.S.C. § 2000e *et seq*. ("Title VII") against the Board. Burkette seeks placement into a coaching position, back pay, benefits, damages for mental anguish and damage to his reputations, punitive damages, attorney's fees, and costs. The Board filed the instant motion for summary judgment. Burkette opposes the motion.

## II.  JURISDICTION AND VENUE

Because this case arises under Title VII, the Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## III.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

Burkette brings discrimination and retaliation claims under Title VII.[6]  To prevail on his claims against the Board, Burkette must prove an intentional discriminatory motive by presenting

---

[6] Title VII prohibits "an employer to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).  Title VII further prohibits retaliation:  "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

either direct or circumstantial evidence of animus based on race or retaliation. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Because Burkette attempts to prove his claims through circumstantial evidence, his claims are analyzed under the burden-shifting analysis found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff must establish a prima facie case, which creates a presumption of unlawful discrimination. *Burdine*, 450 U.S. at 254. To rebut the presumption, the employer must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Summary judgment will be granted in favor of the defendant if the plaintiff fails to produce evidence that is sufficient for a reasonable fact finder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual. *Id.* at 1024-25.

**A.**     *Race Discrimination*

Burkette alleges that he was denied promotions because of his race. The court will analyze the race discrimination allegations with respect to the positions of Lee High School Girls' Basketball

Coach, Brewbaker Tech Girls' Basketball Coach, and Lee High School Athletic Director.[7] Burkette asserts that he makes a prima facie case of race discrimination with respect to each of the above-listed positions. The Board disputes Burkette's establishment of a prima facie case. To establish a prima facie case of discrimination for failure to promote, a plaintiff generally must establish that (1) he is a member of a protected class; (2) he was qualified for and applied for a position that the employer was seeking to fill; (3) he was rejected; and (4) the position was filled with an individual outside the protected class. *See Vessels v. Atlanta Indep. School Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).

The court finds that Burkette has established a prima facie case of race discrimination with regard to the positions of Lee High School Girls' Basketball Coach and Brewbaker Tech Girls' Basketball Coach. Burkette is a qualified black male who applied for and was rejected from the positions, which were filled by persons outside the protected class. The Board disputed only that Burkette applied for these positions; however, Burkette alleged via his affidavit that he submitted a letter of interest to Principal Skipper and Assistant Barker for the Lee High School position and to Principal McLaurine for the Brewbaker Tech position. The court must take as true that, regardless of whether the positions were posted, Burkette applied for the positions. Although Burkette would have a difficult time proving these facts to a jury, he succeeds in establishing a prima facie case.

The court further finds that Burkette also has established a prima facie case of race discrimination with regard to the position of Lee High School Athletic Director. Burkette is a qualified black male who applied for and was rejected from the position, which was filled by a

---

[7] The Board asserts, and Burkette does not dispute, that Burkette does not claim race discrimination with respect to the Head Boys' Basketball Coach at Brewbaker Tech. This position was filled by Shines, a black male.

person outside the protected class. The Board argues that the position was first offered to Ware, a black male, and then filled by Baxter, a white male, only after Ware declined the offer. Notwithstanding this sequence of events, the position was filled by a person outside of Burkette's protected class. Therefore, Burkette has established a prima facie case of race discrimination in hiring for the position of Lee High School Athletic Director. Burkette's prima facie case for these three positions creates a presumption of discrimination.

However, this presumption is rebuttable if the Board carries its burden of production to articulate a legitimate, non-discriminatory reason for failing to promote Burkette. *See McDonnell Douglas*, 411 U.S. at 802. The employer's burden is "exceedingly light," requiring only that the employer offer evidence that could lead a rational fact-finder to believe the decision was not discriminatory. *Turnes v. AmSouth Bank, N.A*, 36 F.3d 1057, 1061 (11th Cir. 1994).

With respect to the positions of Lee High School Girls' Basketball Coach and Brewbaker Tech Girls' Basketball Coach, the Board asserts that Rollan and Arrington were hired for the supplemental coaching positions because they were already in teaching positions at those respective schools. The Board asserts that, with respect to the position of Lee High School Athletic Director (which was being filled simultaneously with the position of Head Football Coach), Baxter was hired because he was already a teacher and an assistant football coach at Lee High School. As a coach and former football player, Baxter was familiar with the athletic programs at Lee High School. The Court finds that the Board's proffered reasons are sufficient to rebut the inference of discrimination with regard to the three positions.

The burden now shifts back to Burkette to demonstrate that the Board's reasons are merely pretextual by introducing "significantly probative evidence." *Clark v. Coats & Clark, Inc.*, 990 F.2d

1217, 1228 (11th Cir. 1993) (citation omitted). He may carry this burden by pointing out "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004). The Supreme Court has held that a "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000).

The Court finds that Burkette has not submitted any evidence that tends to prove that the Board's reasons for hiring the others are pretextual. Other than claiming that Principal Skipper knew that Burkette was black, Burkette offers no evidence and makes no argument that the Board's decision to hire Rollan for the position of Lee High School Girls's Basketball Coach was pretextual.

With respect to the position of Brewbaker Tech Girls' Basketball Coach and Lee High School Athletic Director, Burkette argues that he was more qualified than Arrington and Baxter, respectively. However, he does not offer any admissible proof of the full extent of his qualifications. At most, Burkette's evidence shows that he was qualified for the positions. Even if his alleged resume was admissible, it would not be proof of the duties of various coaching positions or that Burkette performed those duties at a superior, or even an adequate, level. Moreover, Burkette offers no evidence of Arrington's and Baxter's qualifications, which would allow the Court to assess the disparity in the candidates' qualifications. *See Vessels*, 408 F.3d at 772. The Board, on the other hand, offers Burkette's deposition testimony, in which Burkette admitted that he was not certain about Baxter's qualifications, that Baxter "worked hard" as a football coach at Lee High School, and that Burkette only had one year of experience as a football coach. (Burkette Dep. 112-113.)

Assuming arguendo that Burkette had evidence that he was more qualified than the others, it would not be sufficient evidence for a reasonable fact finder to conclude that the Board's reasons for hiring the others and not hiring Burkette are false or pretextual.

Burkette further argues that the Board's proffered reasons for hiring Baxter instead of Burkette for the position of the Lee High School Athletic Director are lies. He argues that if being "an on site employee" and being "familiar with the athletic programs" at Lee High School were criteria for the position of Athletic Director, as averred by Assistant Barker (Barker Aff. ¶ 15), then the position would not have been offered first to Ware, who taught and coached at another school. The Board counters that these statements were taken out of context; the statements do not mean that all applicants were required to be on-site employees and current coaches. Moreover, Ware was in fact familiar with the athletic programs at Lee High School as he had previously coached there. (*Id.*) In light of the Board's reasons for hiring Baxter to be Athletic Director and Head Football Coach (that he was an experienced football coach, familiar with the athletic programs, and already an on-site employee), and after careful consideration, the court cannot conclude that Burkette has submitted sufficient evidence that the Board's reasons are pretextual.

Burkette does not show that the Board's proffered reasons are unworthy of credence. This court is not "a super-personnel department" that will second-guess the decisions made by the Board. *See Elrod v. Sears, Roebuck and Co.*, 939 F.3d 1466, 1470 (11th Cir. 1991) (citation omitted). Accordingly, with respect to the claims for race discrimination, the motion for summary judgment is due to be granted and those claims against the Board are due to be dismissed.

   **B.**     *Retaliation*

Burkette alleges that the Board failed to hire him for the four positions at issue in retaliation for his prior EEOC activity and litigation. Burkette asserts that he makes a prima facie case of retaliation with respect to each of the above-listed positions. To establish a prima facie case of retaliation under Title VII, Burkette must show three elements: (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) the adverse employment action was causally related to his protected activities. *See Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir. 2004).

It is undisputed that Burkette engaged in protected activity. There is evidence before the court that Burkette engaged in protected activity in 1998 when he filed a civil action against the Board for race discrimination, in 2000 when filed a charge of discrimination with the EEOC, and in 2002 when he filed another civil action against the Board for race discrimination. Also undisputed is that a failure to promote is an adverse employment action. According to the available evidence, the positions at issue were available in summer 2003, September 2003, and April 2004. Burkette has not provided any further evidence as to the dates he was rejected for these positions. The Board contends that Burkette cannot establish a causal connection between his protected activity and the Board's hiring decisions with respect to the four positions at issue. Thus, the court focuses its inquiry on the element of causal relationship.

The court finds that Burkette has failed to established a prima facie case of retaliation with regard to all four of the positions because he has no evidence of any causal link between any protected activity and the Board's failures to promote him. The basis for this conclusion is two-fold. First, Burkette has not offered even circumstantial proof that all of the decision-makers had actual knowledge of his prior protected conduct. *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192,

1197 (11th Cir. 1997) (holding that "a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action"). With respect to the positions at Lee High School, Burkette avers that, by witnessing a conversation between him and "Jimmy Perry," Principal Skipper had knowledge of Burkette's previous EEOC charges.[8] (Burkette Aff. ¶ 1.) However, the court cannot credit this allegation as it contradicts his previous testimony. *See Rice v. Barnes*, 149 F. Supp. 2d 1297, 1300 (M.D. Ala. 2001). The Board deposed Burkette, specifically questioning him on the issue of Principal Skipper's knowledge. Burkette admitted at his deposition that he was not certain how Principal Skipper would have known about his protected activity. The Board's knowledge is not imputed to the decision-maker. *See Raney*, 120 F.3d at 1197. With respect to the positions at Brewbaker Tech, Burkette presented no evidence that Principal McLaurine had knowledge of his protected activity. Although Burkette testified that Higgins was aware of Burkette's problems at Cloverdale in 1994, no evidence has been presented that would allow this court to conclude that this was protected activity.

Second, even if the decision-makers had actual knowledge of Burkette's protected activity, Burkette cannot establish the requisite temporal proximity to establish the causal link. Burkette argues that "due to the close timing of the protected activity and adverse employment activity he has presented proof of a 'causal connection' between the two events." (Pl. Br. 14.) In support of this proposition, Burkette cites an October 22, 2003 opinion entered in his 2002 lawsuit; a July 31, 2003 affidavit of H. Clinton Carter, the Superintendent of Montgomery County Public Schools ("Superintendent Carter"); and a July 31, 2003 affidavit of Assistant Barker. Burkette attempts to

---

[8] The affidavit does not specify who Jimmy Perry is.

show temporal proximity by comparing the dates of the affidavits and the opinion (July 2003 and October 2003) with the dates of the failures to promote (summer 2003, September 2003, and April 2004).

But this comparison is improper. These documents do not show, as is required to establish the causal link element, temporal proximity between such protected activity in 2000 and 2002 and the adverse employment actions in 2003 and 2004. They merely show that in July 2003 Superintendent Carter and Assistant Barker had knowledge of Burkette's 2000 EEOC charge and the 2002 lawsuit. Contrary to Burkette's argument, these documents do not show "close timing" as a matter of law. Approximately three years exist between the 2000 EEOC complaint and the failures to promote. Similarly, there is over a year between the initiation of the 2002 lawsuit and the first failure to promote in the summer of 2003.[9] In light of the delay between the protected activity and the allegedly retaliatory acts, the timing of the events does not constitute circumstantial evidence of a causal link. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing affirmatively several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244-45 (11th Cir. 2001) (three and one-half months); *Keel v. United States Dep't of Air Force,* 256 F. Supp. 2d 1269, 1291 (M.D. Ala. 2003) (seven months); *Gaddis v. Russell Corp.,* 242 F. Supp. 2d 1123, 1146-47 (M.D. Ala. 2003) (six months).

---

[9] Court records reflect that the 2002 lawsuit (case no. 02-cv-507) was filed on May 6, 2002. Judgment was entered in favor of the defendants, including the Board, on October 22, 2003. Other than the initiation of the 2002 lawsuit, Burkette does not allege that he participated in protected activity during the course of the lawsuit.

14

Burkette fails to establish a prima facie case of retaliation with respect to any of the four positions at issue. For this reason, the motion for summary judgment, with respect to the claims for retaliation, is due to be granted and those claims against the Board are due to be dismissed.

The court notes that even if Burkette could establish a prima facie case of retaliation, the claims would still fail. As shown in the court's analysis regarding Burkette's claims for race discrimination with respect to the positions of Lee High School Girls' Basketball Coach, Brewbaker Tech Girls' Basketball Coach, and Lee High School Athletic Director, the Board has proffered legitimate, non-discriminatory reasons for hiring persons other than Burkette, and Burkette cannot show that those proffered reasons are pretextual.

This also holds true with respect to the position of Brewbaker Tech Head Boys' Basketball Coach. The Board proffered a legitimate, non-discriminatory reason for hiring Shines instead of Burkette. The Board proffered that Principal McLaurine and Higgins hired Shines because he had success as a coach and it was convenient since he worked at the Brewbaker Complex.

Burkette would not be able to show this reason is pretextual, however. Burkette asserts that he was more qualified than Shines, that Shines would actually spend more coaching time at Lanier High School (where Burkette taught) than at the Brewbaker Complex, and that Burkette "could have been transferred to Brewbaker Tech to teach physical education," a position that was open at the time. (Burkette Aff. ¶ 13.) These bald allegations have no support in the record evidence. Again, Burkette has not submitted proof of his or Shines's qualifications, which would allow for a comparison to be made. Nor has he offered proof that would establish that Brewbaker Tech Boys' Basketball team conducts practice sessions and plays games at Lanier High School or that there is no legitimate reason for the team coach to be teaching near the children he coaches. Furthermore,

Burkette has no proof that there was an available position for a physical education teacher at Brewbaker Tech, that he was qualified for the position, and that he applied for the position.[10]

The court reiterates its holding that the Board is entitled to summary judgment as a matter of law on the retaliation claims because Burkette can neither establish a prima facie case nor demonstrate pretext.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that the defendant's Motion for Summary Judgment (Doc. # 13) is GRANTED.  All claims are DISMISSED with prejudice.  All remaining dates and deadlines are cancelled.

A judgment will be entered.

DONE this the 31st day of October, 2006.

        /s/  W.  Keith Watkins
        UNITED STATES DISTRICT JUDGE

---

[10]  Burkette further alleges that the Board hired someone who was "without previous EEOC activity against the Board of Education."  (Burkette Aff. ¶ 10.) The court finds that this allegation is not at all relevant to the anlaysis of a retaliation claim.

16